IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LOPA M. PATEL, | |
| **Plaintiff,** | |
| v. | CIVIL ACTION NO. _____ |
| DEKALB REGIONAL HEALTH SYSTEM, INC., DEKALB MEDICAL CENTER, INC., AND EMORY HEALTHCARE, INC., | JURY TRIAL DEMANDED |
| **Defendants.** | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Lopa M. Patel ("Plaintiff" or "Mrs. Patel"), and hereby files this Complaint for Damages against the above-named Defendants, showing the Court as follows:

## NATURE OF ACTION

1.

Plaintiff brings this action for damages against Defendants for violating her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e) ("Title VII"), and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621, *et seq* ("ADEA").

{00009663.DOCX}

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§1331 & 1343, 42 U.S.C. §1981, and 29 U.S.C. §621.

3.

The unlawful employment practices alleged in this Complaint were committed within the Northern District of Georgia (the "District"). In accordance with 28 U.S.C. §1391 and 42 U.S.C. §1981, venue is appropriate in this Court.

## PARTIES

4.

Plaintiff is a 54-year old Asian (South Asian/Indian descent) female; she practices the Hindu religion. Plaintiff is subject to the jurisdiction of this Court.

5.

At all times relevant hereto, DeKalb Medical Center, Inc. ("DeKalb Medical") is a Corporation organized and existing under the laws of Georgia, with its principal place of business located at 2701 North Decatur Road, Decatur, Georgia 30033. At all times material hereto, DeKalb Medical has conducted business within this District.

{00009663.DOCX}                    2

6.

DeKalb Regional Health System, Inc. ("DRHS") is the parent corporation of DeKalb Medical.  It is organized and existing under the laws of Georgia, with its principal place of business at 2701 North Decatur Road, Decatur, Georgia 30033.  At all times relevant hereto, DRHS has conducted business within the District.

7.

Emory Healthcare, Inc. ("Emory") is the parent corporation of DRHS.  It is organized and existing under the laws of Georgia, with its principal place of business located at 201 Dowman Drive NE, 102 Administration Building, Atlanta, Georgia 30322.  At all times material hereto, Emory has conducted business within this District.

8.

DeKalb Medical may be served with process by delivering a copy of the Summons and Complaint to its Registered Agent, Charles B. Eberhart, 2675 North Decatur Road, Decatur, Georgia 30030.

9.

DRHS may be served with process by delivering a copy of the Summons and Complaint to its Registered Agent, Charles B. Eberhart, 2675 North Decatur Road, Decatur, Georgia 30030.

10.

Emory may be served with process by delivering a copy of the Summons and Complaint to its Registered Agent, Amy Adelman, Emory University, 201 Dowman Drive, 312 Administration Building, Atlanta, Georgia 30032.

11.

On September 1, 2018, Emory acquired DRHS, which owned DeKalb Medical (collectively "DeKalb Medical Entities"). The DeKalb Medical Entities are now, and at all times relevant hereto, have been not-for-profit corporations engaged in the healthcare industry, which is an industry that affects commerce.

12.

During all times relevant hereto, DeKalb Medical and DRHS have employed fifteen (15) or more employees for the requisite duration under Title VII. The DeKalb Medical Entities are therefore covered under Title VII in accordance with 42 U.S.C. §2000e(b).

13.

At all times relevant to this Complaint, Plaintiff was employed by and was an "employee" of DeKalb Medical and DRHS as defined under the ADEA at 29 U.S.C.§630(f).

{00009663.DOCX}                    4

14.

During all times relevant hereto, DeKalb Medical and DRHS have employed twenty (20) or more employees for the requisite duration under the ADEA.   The DeKalb Medical Entities are therefore covered under the ADEA in accordance with 29 U.S.C.§630(b).

## ADMINISTRATIVE PROCEDURES

15.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII and the ADEA.   On February 9, 2018, Plaintiff filed her Charge of Discrimination against DeKalb Medical and DRHS, which was assigned Charge Number 410-2018-03225.   The Equal Employment Opportunity Commission ("EEOC") issued its Dismissal and Notice of Rights on August 27, 2018.

16.

Plaintiff timely files this action within ninety (90) days of her receipt of the Notice of Right to Sue from the EEOC.

## FACTUAL ALLEGATIONS

### Employment History

17.

Patel was employed by DeKalb Medical for over 23 consecutive years, with a combined employment total of almost 25

years of service.  During her tenure, Patel's performance was exemplary.  She did not have any disciplinary problems, and she always received excellent reviews and maximum salary increases.

18.

Patel's exemplary performance is further evidenced by the fact that, throughout her tenure, including through the Summer of 2017, she regularly and routinely trained other technologists.  Moreover, she was selected by the Supervisor of the Ultrasound Department, Petal Peters, to serve as a member of the peer interview committee, who was among the team responsible for hiring new technologists.  And, Patel was selected to work with a Radiologist to develop new protocols for certain ultrasound examinations, and, thereafter train all of her co-workers concerning same.

19.

Perhaps the fact that most illustrates Patel's excellence and her highly regarded reputation, is the response that her colleagues had to her termination.  Indeed, many of the staff members, including the Radiologists, wanted to start a petition for Patel's rehire.

20.

For this reason, and other reasons discussed herein, it is simply nonsensical that there would have been any legitimate

{00009663.DOCX}                    6

basis upon which to terminate Patel.  And, indeed, there were none.

**Final Written Warning**

21.

On or about May 2, 2017, Patel inexplicably received a Final Written Warning ("FWW").  The FWW alleged that Patel had engaged in conduct that, in essence, violated DeKalb Medical's Code of Conduct as it relates to an incident that occurred between Patel and a colleague, Juliette Ilyayev ("Ilyayev"), a person with whom Patel has worked for 15 years.  Patel was accused of making inappropriate comments to Ilyayev and for invading her personal space when they were discussing restocking the crash cart.

22.

On the day that the FWW was issued, Patel was given the document, and told that she must sign and acknowledge it immediately.  Since Patel had rarely been disciplined before, she was unfamiliar with the discipline process, and was unfamiliar with her rights relative to the FWW that was being issued.  Accordingly, following the commands of her Manager, Camie Mills ("Mills"), Patel signed the document.  Patel then asked whether she could speak with someone in Human Resources ("HR") about the FWW.  Patel did not agree with the accusations

or the action that was being taken, and since Mills would not listen to her, she desired to involve HR because of their perceived independence.

23.

At that point, Mills informed Patel that she could write a statement, but that she only had 30 minutes within which to do so.  Mills indicated that she would submit the statement to HR. Despite being given insufficient time to even write a statement, Patel did the best that she could and wrote down the facts of the exchange that she had with Ilyayev.  She gave the document to Mills.  It is unknown as to what Mills did with the document as Patel never heard anything further about it and she never received any communications about it from HR.

24.

So, before an investigation was even conducted regarding the facts and circumstances of what occurred between Patel and Ilyayev, Mills issued not only disciplinary action, but an FWW. It was as though because Ilyayev, a white woman, made the allegation, it was irrelevant as to the veracity of said statements or Patel's account of the events that transpired. And, the fact that Patel was prohibited from even speaking to HR about the issue further prejudicing Patel and her employment interests.

25.

Indeed, Ilyayev was given an opportunity to tell "her side of the story."  Patel, a minority, should have been given the exact same opportunity as Ilyayev, and an objective decision should have been made about whether disciplinary action was even necessary, let alone an FWW, under the collective circumstances. But, Patel was not afforded that opportunity.

26.

Notwithstanding, Patel continued to move forward and to do her job well.  Indeed, Patel continued to be called upon to train other ultrasound technologists.  Patel did not realize the significance of the FWW, and that Mills would use the FWW as a springboard to her termination just 3.5 months later.

**Hillandale Transfer**

27.

As part of Patel's employment responsibilities to DeKalb Medical, she was assigned to assist the Hillandale clinic approximately once per week.  In late spring 2017, a technologist resigned from Hillandale and left a vacancy.  Patel expressed a desire to fill the vacancy.  She had a great relationship with the Hillandale manager, Stella Chambers. Following DeKalb Medical's protocol, Patel applied for the Hillandale position, and went through the complete interview

process.   This process, which included involvement of the HR Department, a review and analysis of Patel's personnel file by the decision-makers, and Patel being interviewed by members of the Peer Interview Team.   Patel was selected to fill the vacancy at Hillandale.   However, Mills denied Patel's transfer request, citing that Patel was under an FWW, and thus, could not transfer.

28.

DeKalb Medical's position in this regard is curious, at best.   Patel was placed under the FWW because of her alleged interaction with Ilyayev.   Putting aside whether Ilyayev's account of her interaction with Patel was accurate or truthful, one way to ensure that Patel and Ilyayev had no further issues would have been to grant the transfer request.   There was simply no legitimate basis for Mills to deny Patel's transfer inasmuch as, despite being under a subjective, ill-issued FWW, there was no prohibition against Patel being transferred so long as Mills approved same.   The denial of the transfer is further evidence of the prejudice and discriminatory treatment that was repeatedly demonstrated towards Patel.

**Termination**

29.

On or about August 18, 2017, Mills informed Patel that she was being terminated. Mills contended that, on or about August 16th, "someone" told her that Patel had created an uncomfortable work environment for "others." Mills further contended that Patel violated DeKalb Medical's Code of Conduct by demonstrating disrespectful behavior to others. It was maintained that Patel was questioning an employee's religious beliefs and country of origin. It was further maintained that when an employee told Patel where she received her training, Patel stated that "oh you are from that school, you don't know anything."

30.

When Patel attempted to ask questions about Mill's contentions, or even to ascertain to whom Patel allegedly made these statements, Mills was not forthcoming and shut her down. When Patel indicated that she desired to speak with someone in Human Resources about the matter, Mills informed her that she needed to turn in her badge and to leave DeKalb Medical immediately. Mills further indicated that if Patel failed to do so, security would be called and she would be immediately escorted from the building.

{00009663.DOCX}                    11

31.

Putting aside the inappropriateness of Mills' behavior and threats, it is beyond incomprehensible how an organization, as reputable as DeKalb Medial, could possibly believe that its behavior is appropriate in this context.   Patel had been employed with DeKalb Medical for a collective 25 years.   She was accused of inappropriate behavior, and before she even had an opportunity to respond, she was terminated.

32.

Someone allegedly makes a complaint about an employee of 25 years, and an investigation is not even undertaken.   Rather, the employee's allegations are assumed true, and immediate action taken.   This makes no legitimate business sense.   It appears that DeKalb Medical was "looking for a reason" to terminate Patel that had absolutely nothing to do with Patel's performance or otherwise.

**Post-Termination Activities**

33.

Patel left the termination meeting with Mills confused and troubled.   You see, Patel knew that the allegations against her were not accurate.   She had no idea who made the allegations, or why someone would lie about her.   She wanted someone to investigate what happened, and for an independent decision to be

{00009663.DOCX}                    12

made.    She wanted the termination reviewed, and to be given an opportunity to be heard.

34.

As a result, on August 21st, Patel visited DeKalb Medical's HR.    She desired to meet with Angela Williams, whom she was informed was aware of her employment history at DeKalb Medical. Williams was not in the office.    Patel was connected with Daisy Salazar, who told her that she can have 10 minutes to tell her story.    Salazar reviewed the termination notice, and did not do much else.    Patel indicated that she would still like to speak with Williams but she was never contacted by Williams or anyone else in HR.

35.

Not knowing what else to do, Patel reached out to Forstner, in an attempt to better understand why she was terminated and how she could be terminated without an investigation.    After several weeks of trying to secure a meeting with Forstner, Patel was finally successful.    They met on or about October 4th, and was joined by Hardin.

36.

Yet, at the commencement of the meeting, Forstner made clear that he had no intention of overturning the termination decision but wanted to give Patel an opportunity to tell her

story.    This is perplexing.    Patel reached out to executive leadership, because HR was not responsive, and desired to tell her story so that her termination could be properly investigated.    Yet, before Patel was afforded the opportunity, Forstner made a decision concerning Patel's termination and the legitimacy thereof prior to even meeting with Patel.

37.

Subsequent to the meeting, Patel was contacted on or about October 12th by Hardin, who told Patel that "she reviewed Patel's HR file" and stands by the employment termination.    This decision, and the conduct that led up to same, is troubling, at best.    If the information reflected in the HR file was based on hearsay, and no investigation was conducted, it is perplexing how a legitimate HR professional could rely on said information to confirm the termination of a valued employee of 25 years.

38.

Under the peculiar circumstances in which Patel's termination was not only executed but then upheld, there seems to be more to her termination than DeKalb Medical is representing.    It appears that the termination reasons were a pretext to discrimination, and that Patel was terminated for reasons unrelated to the stated facts.    That is the only circumstance that could legitimately explain why no

investigation was held. Indeed, it appears to be DeKalb Medical's rationale that regardless of any investigation outcome, Patel would still have been terminated because the proffered termination reasons were mere pretext.

**Rationale Fails**

39.

Patel's termination and the proffered reasons therefor do not pass muster. They make no legitimate business sense. The manner in which Patel's termination was executed was improper, as acknowledged by both Forstner and Hardin during their meeting with Patel.[1] The manner in which Patel was treated is not how an employee should be treated, especially someone with a 25 year employment history and whom is held in such high regard by her colleagues.

40.

Putting aside the fact that the conduct in which she was accused does not warrant termination, even if the allegations

---

[1] During Patel's meeting with Forstner and Hardin, Forstner conceeded that an investigation should have taken place prior to Patel's termination, that Patel should have been given an opportunity to "tell her side of the story," and that Patel should have been given an opportunity to consult with HR prior to her termination. Indeed, Forstner indicated that the foregoing represented DeKalb Medical's standard practices, and could not provide an explanation as to why Mills deviated from said practices.

{00009663.DOCX}                    15

were true, everything about the way it was handled does not add up. It is pretextual. Patel's termination was undoubtedly motivated by reasons unrelated to performance or any legitimate factor. The sole basis for Patel's termination was discrimination against her by Mills, a DeKalb Medical Manager.

## CLAIMS FOR RELIEF

## COUNT ONE: DISCRIMINATION IN VIOLATION OF TITLE VII

41.

Plaintiff incorporates by reference, as fully set forth herein, the allegations set forth in Paragraphs 1 through 40.

42.

Defendants' actions in subjecting Plaintiff to race, national origin, and religion discrimination constitutes unlawful discrimination on the basis of Plaintiff's race, national origin, and religion in violation of Title VII.

43.

Defendants' actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of her race, national origin, and religion, in violation of Title VII.

{00009663.DOCX}                        16

44.

Defendants' willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

45.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect her status as an employee because of her race, religion, and national origin.

46.

As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

47.

Accordingly, Defendants are liable for the damages Plaintiff has sustained as a result of Defendants' unlawful discrimination.

**COUNT II: AGE DISCRIMINATION IN VIOLATION OF THE ADEA**

48.

Plaintiff incorporates by reference, as if fully set forth herein, the allegations set forth in Paragraphs 1 through 40.

{00009663.DOCX}                    17

49.

Defendants' actions in subjecting Plaintiff to different terms and conditions of employment based on her age, constitutes unlawful discrimination in violation of the Age Discrimination in Employment Act, as amended.

50.

Defendants have willfully and wantonly disregarded Plaintiff's rights and its discrimination against Plaintiff was undertaken in bad faith.

51.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of her age.

52.

As a direct and proximate result of the Defendants' violation of the ADEA, Plaintiff has lost wages and benefits, and has suffered emotional distress for which she is entitled to recover from Defendants.

53.

Plaintiff is also entitled to punitive damages, reinstatement in lieu thereof, equitable relief, attorney's

{00009663.DOCX}                    18

fees, cost of litigation and all other relief recoverable under the ADEA.

### PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court award the following:

(a) General damages for mental and emotional suffering caused by Defendants' misconduct;

(b) Punitive damages based on Defendants' willful, malicious, intentional, deliberate acts, including ratification, condonation and approval of said acts;

(c) Special damages and/or liquidated damages for lost wages and benefits and prejudgment entered thereon;

(d) Reasonable attorney's fees and expenses of litigation;

(e) Trial by jury as to all issues;

(f) Prejudgment entrance at the rate allowed by law;

(g) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h) Injunctive relief of reinstatement, or front pay in lieu thereof, in prohibiting Defendant from further unlawful conduct of the type described herein; and

(i) All such other relief to which she may be entitled.

**[SIGNATURE CONTINUED TO NEXT PAGE]**

{00009663.DOCX}                          19

**[SIGNATURE CONTINUED FROM PREVIOUS PAGE]**

Respectfully submitted this 27th day of November, 2018.

**TOWNSEND & LOCKETT, LLC**

| | |
|---|---|
| 1100 Peachtree Street | By:/s/Steven J. Pritchett |
| Suite 950 | Steven J. Pritchett |
| Atlanta, Georgia 30309 | Georgia Bar No. 142309 |
| Telephone:  (404) 870-8501 | |
| Facsimile:  (404) 870-8502 | *Attorneys for Plaintiff* |
| steven.pritchett@townsendloc | |
| kett.com | |

{00009663.DOCX}                    20